IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, solely as Trustee<br><br>Plaintiff,<br><br>v.<br><br>HAMILTON GARDENS CDO LTD.; HAMILTON GARDENS CDO CORP.; CRESCENT II FUND, L.P.; ELLINGTON CREDIT OPPORTUNITIES, LTD.; EF SECURITIES LLC; ELLINGTON SPECIAL OPPORTUNITIES LLC; HH ELLINGTON MASTER FUND LTD., CITIGROUP GLOBAL MARKETS INC.; CÖOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A.; HARE & CO. AS NOMINEE FOR THE BANK OF NEW YORK MELLON; GOLDMAN, SACHS & CO.; CEDE & CO. AS NOMINEE FOR THE DEPOSITORY TRUST COMPANY; and JOHN DOES 1 THROUGH 100,<br><br>Defendants. | Case No. 15-4602 |

## INTERPLEADER COMPLAINT

The Bank of New York Mellon Trust Company, National Association ("BNYM"), solely in its capacity as Trustee (the "Trustee") under an Indenture (the "Indenture"), dated as of September 21, 2006, by and among Hamilton Gardens CDO Ltd., as Issuer (the "Issuer"), Hamilton Gardens CDO Corp., as Co-Issuer (the "Co-Issuer", and together with the Issuer, the "Co-Issuers") and the Trustee,[1] for its Interpleader Complaint hereby alleges and states as follows:

---

[1] BNYM succeeded JPMorgan Chase Bank, N.A. as Trustee.

1

# I.
# **NATURE OF ACTION**

1. This is an interpleader action brought for the purpose of adjudicating the respective rights of the interpleader defendants with respect to certain assets held by the Trustee in connection with a CDO transaction. The Trustee faces competing demands by certain interpleader defendants with respect to such assets and wishes to obtain the direction of the Court as to the proper disposition of these assets.

2. BNYM serves as Trustee under the Indenture.[2]

3. Pursuant to the Indenture, the Co-Issuers issued the Class A-1 Notes, the Class A-2 Notes, the Class B Notes, the Class C Notes and the Class D Notes (collectively, the "Notes"). Each Class of Notes differs with respect to rights to priority of payment of principal and interest.[3]

4. Pursuant to the Granting Clauses of the Indenture, the Trustee is a Secured Party for the benefit of the beneficial owners of the Notes (the "Holders").

5. The Notes are currently outstanding.

6. On or about November 10, 2008, the Trustee sent a notice in which it notified the Holders of the Notes that an Event of Default had occurred under Section 5.1(h) of the Indenture (the "Notice of Event of Default").

7. On November 4, 2014, Citigroup Global Markets Inc. ("Citigroup Global"), as a Holder of certain Class A-2 and Class B Notes, sent a letter to the Trustee appearing to assert that Section 5.17(d) of the Indenture prohibits the Trustee from liquidating the Collateral where

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Indenture.
[3] The Issuer also issued a single Class of Subordinated Notes pursuant to the Fiscal Agency Agreement (the "Fiscal Agency Agreement") dated as of September 21, 2006 between the Issuer and BNYM as fiscal agent (the "Fiscal Agent"), which have different payment priority rights than the Notes.

2

the liquidation proceeds would be insufficient to pay all outstanding principal and interest on each Class of Notes.  Section 5.17(d) of the Indenture provides:

> Notwithstanding anything to the contrary in this Indenture, no Collateral may be liquidated unless the Trustee determines, based on consultations with the Investment Manager, acting on behalf of the Issuer, that the proceeds from the Sale/Termination of the Collateral will be sufficient to pay all outstanding or contingent liabilities of the Issuer under the Transaction Documents, including as a result of the termination of the Transactions.

Upon information and belief, other Holders of Class A-2 and Class B Notes may assert views similar to Citigroup Global's position.

8. Upon information and belief, proceeds from the liquidation of the Collateral would be insufficient to pay the outstanding principal and interest on all Classes of Notes.

9. On May 18, 2015, Crescent II Fund, L.P. ("Crescent"), Ellington Credit Opportunities, Ltd. ("Ellington Credit"), EF Securities LLC ("EF Securities"), Ellington Special Opportunities LLC ("Ellington Special") and HH Ellington Master Fund Ltd. ("HH Ellington", and together with Crescent, Ellington Credit, EF Securities and Ellington Special, the "Ellington Funds") as Holders of a majority of the Class A-1 Notes and, therefore, as the Controlling Class, directed the Trustee to liquidate the Collateral notwithstanding Section 5.17(d) (the "Direction to Liquidate").  The Ellington Funds contend that liquidation is appropriate despite Citigroup Global's apparent position, because otherwise virtually all liquidations arising out of an Event of Default would be barred.

10. On or about May 21, 2015, the Trustee sent a notice (the "Notice of Acceleration and Direction to Sell or Terminate Collateral") in which it notified the Holders of the Notes that the Holders of a majority of the Aggregate Outstanding Amount of the Controlling Class of Notes had directed the Trustee to declare the principal of all of the Notes to be immediately due and payable under Section 5.2 of the Indenture and accordingly that the Trustee was declaring

the principal of, and accrued and unpaid interest on, all of the Notes to be immediately due and payable in full.

11. In the same Notice of Acceleration and Direction to Sell or Terminate Collateral, the Trustee notified the Holders of the Notes and others that the Controlling Class had also directed the Sale or Termination of the Collateral.

12. Prior to the liquidation of the Collateral, the Indenture provides that funds are distributed on each Payment Date pursuant to Section 11.1(a) and Section 11.1(b) of the Indenture (together, the "Pre-Liquidation Waterfall"). Following the liquidation of the Collateral, the Indenture provides that funds distributed on the Final Maturity Date (a term defined to include payments from the liquidation of the Collateral) are distributed pursuant to Section 11.1(c) of the Indenture (the "Post-Liquidation Waterfall"). The Pre-Liquidation and Post-Liquidation Waterfalls set forth different payment priorities across the Classes of Notes.

13. The Indenture provides for the distribution of payments on specified, quarterly dates. The next Payment Date is June 15, 2015 (the "June Payment Date"), and, barring the Direction to Liquidate, approximately $203,000 (the "Disputed Funds") would be distributed to the Class A-2 and Class B Holders on that date.

14. If Citigroup Global's interpretation of the Indenture is correct, the Pre-Liquidation Waterfall would apply to the Disputed Funds, and Holders of the Class A-2 and Class B Notes (including Citigroup Global) would be entitled to the Disputed Funds.

15. If the Ellington Funds' interpretation is correct, the Post-Liquidation Waterfall would apply to the Disputed Funds, and the Disputed Funds would be paid to Holders of Class A-1 Notes only.

16. Accordingly, the Trustee now seeks to interplead the Disputed Funds and ultimately discharge itself from this action.

17. The Trustee has no liability to any of the interpleader defendants, and the Trustee has no bias, preference or opinion as to which of the above demands, if any, are ultimately deemed proper by this Court.  Moreover, the Indenture provides a number of protections insulating the Trustee from liability.

## II.
## PARTIES

18. BNYM is a national banking association with its principal place of business at 700 South Flower Street, Suite 200, Los Angeles, California 90017.

19. Upon information and belief, Hamilton Gardens CDO Ltd. is an exempted company with limited liability incorporated under the laws of the Cayman Islands with its principal place of business in the Cayman Islands.

20. Upon information and belief, Hamilton Gardens CDO Corp. is a Delaware corporation with its principal place of business in Newark, Delaware.

21. Upon information and belief, Crescent is a Delaware limited partnership with its principal place of business at 53 Forest Avenue, Old Greenwich, CT 06870.

22. Upon information and belief, Ellington Credit is a corporation organized under the laws of the Cayman Islands with its principal place of business at 53 Forest Avenue, Old Greenwich, CT 06870.

23. Upon information and belief, EF Securities is a limited liability company organized under the laws of Delaware with its principal place of business at 53 Forest Avenue, Old Greenwich, CT 06870.

24. Upon information and belief, Ellington Special is a limited liability company organized under the laws of Delaware with its principal place of business at 53 Forest Avenue, Old Greenwich, CT 06870.

25. Upon information and belief, HH Ellington is a corporation organized under the laws of the Cayman Islands with its principal place of business at 53 Forest Avenue, Old Greenwich, CT 06870.

26. Upon information and belief, Citigroup Global is a corporation organized under the laws of the State of Delaware with its principal place of business at 390 Greenwich Street, New York, NY 10013.

27. Upon information and belief, Cöoperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank") is the Investment Manager under the Investment Management Agreement dated as of September 21, 2006 and is a cooperative banking organization chartered under the laws of The Netherlands with its principal place of business in Utrecht, The Netherlands. Upon information and belief, Rabobank, as the Investment Manager, may have an interest in the resolution of this matter.

28. Upon information and belief, Hare & Co. is the nominee name of The Bank of New York Mellon, a state bank organized under New York banking law with its principal place of business at One Wall Street, New York, NY 10286. Upon further information and belief, Hare & Co. is the registered Noteholder of certain of the Class A-1 Notes and Subordinated Notes. As the registered Noteholder of the Subordinated Notes, Hare & Co. holds such Subordinated Notes for the benefit of others and may have an interest in the Disputed Funds.

29. Upon information and belief, Goldman, Sachs & Co. is a corporation organized under the laws of the State of Delaware with its principal place of business at 30 Hudson Street,

6

Jersey City, New Jersey 07302.  Upon further information and belief Goldman, Sachs & Co. is the registered Noteholder of certain of the Class A-1 Notes.  As the registered Noteholder of certain of the Class A-1 Notes, Goldman, Sachs & Co. holds such Class A-1 Notes for the benefit of others, is subject to the terms of the Indenture, and may have an interest in the Disputed Funds.

30.     Upon information and belief, Cede & Co. is the nominee name of the Depository Trust Company, a limited purpose trust company organized under New York banking law with its principal place of business at 55 Water Street, New York, NY 10041.  Upon further information and belief, Cede & Co is the registered Noteholder of certain Classes of global Notes and Subordinated Notes.  As the registered Noteholder of certain Classes of global Notes and Subordinated Notes, Cede & Co. is subject to the terms of the Indenture, and may have an interest in the Disputed Funds.

31.     John Does 1 through 100 are sued in this action because, upon information and belief, they are the beneficial owners of certain global Notes and Subordinated Notes held in the nominee name of Cede & Co. through the Depository Trust Company.  The Trustee is not aware of all the owners of the beneficial interests in the global Notes held by Cede & Co.  John Does 1 through 100, as owners of beneficial interests in certain global Notes and Subordinated Notes held by Cede & Co., may have an interest in the Disputed Funds.

### III.
### JURISDICTION AND VENUE

32.     Jurisdiction is appropriate under 28 U.S.C. § 1335 because this is a civil action of interpleader or in the nature of interpleader, two or more adverse interpleader defendants are of diverse citizenship and the amount in controversy exceeds $500.

33. Pending resolution of this dispute, and subject to any order of this Court, the Trustee will not sell or terminate any Collateral or otherwise make a distribution of the monies that are the subject of the instant dispute on the June Payment Date or otherwise.

34. Additionally, this Court has jurisdiction over this action pursuant to 12 U.S.C. § 632, which provides for jurisdiction over suits involving international banking where at least one party to the suit is an entity organized under the laws of the United States and the suit arises out of a transaction involving international or foreign banking or financial operations.

35. The Trustee is a national banking association organized under the laws of the United States.

36. This suit arises out of transactions involving international banking in that it involves the Indenture, which is an agreement among Hamilton Gardens CDO Ltd., a foreign corporation organized under the laws of the Cayman Islands, Hamilton Gardens CDO Corp. and the Trustee.

37. Venue is proper in this district because Section 14.10 of the Indenture, which gives rise to this action, provides for submission to venue in this district.

## IV.
## FACTUAL ALLEGATIONS

38. BNYM, as the Trustee under the Indenture, receives, holds and distributes funds pursuant to the terms of the Indenture.

39. Upon information and belief, the Ellington Funds hold a majority of the Class A-1 Notes, and, accordingly, are the Controlling Class under the Indenture.

40. The Ellington Funds have communicated to the Trustee their position that under the Indenture, when read as a whole, the Trustee is obligated to liquidate the Collateral upon direction by the Controlling Class.

8

41. In contrast, by letter dated November 4, 2014, Citigroup Global, as a Holder of Class A-2 and Class B Notes, appears to assert that Section 5.17(d) precludes liquidation of the Collateral because the proceeds from such liquidation would be insufficient to pay all outstanding principal and interest on each Class of Notes.

42. Thus, the Ellington Funds and Citigroup Global dispute whether the Ellington Funds can direct the Trustee to liquidate the Collateral under the terms of the Indenture.

43. The Indenture requires that payments to Holders of the Notes be made quarterly on specified Payment Dates. The next Payment Date is June 15, 2015. The Pre-Liquidation Waterfall provides for payments of Cumulative Interest Amounts to the Holders of the Class A-1 Notes, Class A-2 Notes and Class B Notes before principal payments are made to the Holders of the Class A-1 Notes. However, the Indenture provides that the Post-Liquidation Waterfall shall be applicable for all payments to be made on the Final Maturity Date (which term is defined to include payments from the liquidation of the Collateral). The Post-Liquidation Waterfall provides that all funds are to be distributed to the Holders of the Class A-1 Notes, until the Class A-1 Notes are paid in full, before any payment is made to the Holders of the Class A-2 Notes or Class B Notes.

44. If the Pre-Liquidation Waterfall governs the distribution on the June Payment Date, approximately $203,000 would be paid to the Holders of the Class A-2 and Class B Notes. However, if the Post-Liquidation Waterfall governs, the approximately $203,000 that would otherwise go to the Holders of the Class A-2 and Class B Notes would instead be distributed to the Holders of the Class A-1 Notes. This approximately $203,000, along with any portion of any future quarterly payments that would be distributed to the Holders of the Class A-2 Notes and Class B Notes, constitutes the Disputed Funds.

45.     Due to the Ellington Funds' and Citigroup Global's conflicting positions regarding Section 5.17(d), the Trustee is unable to determine whether to comply with the Direction to Liquidate and apply the Post-Liquidation Waterfall to the Disputed Funds; or continue to apply the Pre-Liquidation Waterfall to the Disputed Funds.

46.     The Trustee thus seeks to interplead the Disputed Funds because the proper recipient(s) of these Funds depends on the Court's resolution of the dispute described herein. Although the Disputed Funds are currently approximately $203,000, the amount of Disputed Funds that are the subject of this interpleader will increase during the pendency of this action as subsequent Payment Dates occur.

## V.
## INTERPLEADER REQUIREMENTS

47.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

48.     This brief statement of background facts makes it clear that the respective claims to the Disputed Funds currently in the Trustee's possession are adverse and conflicting and are made without collusion. The Trustee is unable to determine which, if any, of the claims are valid and/or in what amounts.

49.     The Trustee cannot make any payments or disbursements of the Disputed Funds to any party without this Court's determination of the respective interests in such funds.

50.     Because the Trustee lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds subject to this controversy, the Trustee contests the alleged rights of all parties asserting a claim to such Disputed Funds in its possession (or to be received following the date hereof). Due to the amount at issue at present, which is approximately $203,000, the Trustee is willing to place the entirety of the Disputed Funds (*i.e.*,

the approximately $203,000 currently held plus future funds received and otherwise payable on subsequent Payment Dates) in an interpleader escrow account (the "Interpleader Escrow") held by the Trustee, preserving such funds and reserving all rights and claims thereto, pending a determination by this Court of the controversy and the respective rights to such Disputed Funds. Amounts deposited in such Interpleader Escrow will be invested in the same manner as other amounts held in the Collection Account unless otherwise ordered by the Court. All investment income will be deposited into the Interpleader Escrow.

51. The Trustee has no interest as a claimant in the Disputed Funds withheld and maintained on the basis of this interpleader except to the extent of reasonable Trustee's fees, attorneys' fees, costs, and disbursements with respect to this action and the maintenance and distribution of the funds as provided for in Section 6.7 of the Indenture and/or as otherwise awarded by the Court.

52. Pursuant to Sections 6.1(c)(iv) and 6.7 of the Indenture, the costs of this interpleader action should not be incurred by the Trustee and instead may be assessed against any party to this litigation. Accordingly, the Trustee should be permitted to pay for the costs of this suit out of the Disputed Funds held in the Interpleader Escrow on a periodic basis, as approved by the Court.

## VI.
## CONCLUSION AND PRAYER

BASED UPON THE FOREGOING, the Trustee respectfully requests that the Court enter an order: (1) directing the Trustee to deposit and maintain the Disputed Funds in an Interpleader Escrow held and segregated in the Collection Account under the Indenture and to invest such Disputed Funds in the same manner as other amounts held in the Collection Account or any similar fund unless ordered otherwise by the Court (with all investment income being deposited

into such Interpleader Escrow) until the parties' respective rights to such Disputed Funds are determined by the Court; (2) ordering the Trustee, pending resolution of this dispute, to continue on each quarterly Payment Date (beginning on the June Payment Date and each subsequent Payment Date thereafter) to make payments of all amounts other than the Disputed Funds placed into the Interpleader Escrow; (3) requiring all parties and all other individuals or entities claiming a right to the Disputed Funds to appear and assert their respective claims to the Disputed Funds, if any, and their respective rights, if any, as a consequence of this action under the Indenture; (4) enjoining all parties and all other interested persons from instituting or pursuing any proceedings in any court, federal or state, against the Trustee for the recovery of the Disputed Funds, on account of any party's purported claims or rights to such Disputed Funds, and/or on account of any party's purported rights arising as a consequence of this action under the Indenture; (5) directing the Trustee to distribute amounts in the Interpleader Escrow as directed by the Court upon final judgment determining the respective interests of the Defendants and all other interested persons in the Disputed Funds; (6) permitting the Trustee to continue to pay its Trustee's fees, attorneys' fees, costs and expenses incurred in connection with the matters leading up to and relating to this action on a periodic basis; (7) releasing and discharging the Trustee from any and all liability to any party and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds and with respect to any consequences of this action under the Indenture, conditioned upon the Trustee's compliance with the future orders and judgment of the Court as described above, and (8) granting the Trustee such other and further relief, at law or in equity, to which it may show itself justly entitled.

Dated: June 12, 2015
      New York, New York

                                      Respectfully submitted,

                                      */s/ Joseph N. Froehlich*
                                      Joseph N. Froehlich (JF-5221)
                                      Casey B. Howard (CH-4633)
                                      LOCKE LORD LLP
                                      Three World Financial Center
                                      New York, New York 10281
                                      jfroehlich@lockelord.com
                                      choward@lockelord.com
                                      Telephone:    212.415.8600
                                      Facsimile:    212.303.2754